M. N. JOHNSON, Appellant, v. CLAUDE B. KEIR et al., Appellees.

No. 42877.

June 21, 1935.

Currie & Wilson, for appellant.

Atwood & McCauley, for appellees.

ANDERSON, C. J.—The case was tried below upon a stipulation of facts which discloses the following situation:

On the 28th of May, 1926, a judgment was entered in the district court against George and Roy Zimmerman and in favor of the Sac County State Bank. The defendant, Claude B. Keir, obtained an assignment of said judgment on or about May 14, 1934, from the receiver of said bank.

On June 18, 1927, the defendant, George Zimmerman, executed a promissory note, secured by a mortgage upon real estate, to the Farmers Savings Bank of Sac City, Iowa. This mortgage was duly recorded, and on May 21, 1934, at the time suit was brought to foreclose, there was a balance due thereon in the sum of $1,356.50. This mortgage and note was assigned by the receiver of the Farmers Savings Bank, under an order of court made on December 13, 1933, to the Security Investment Company, and by that company sold and assigned to the plaintiff herein, M. N. Johnson. The stipulation of facts states that the assignment was made to the plaintiff sometime in January, 1934; however, the appellees object to this statement of fact

for the reason, as they claim, that the record of the assignment shows that the mortgage was assigned to plaintiff, Johnson, in September, 1933. While it may not be material to the determination of the issue here presented, we are inclined to the belief that the appellees must be mistaken in their statement as to these dates. It appears that the order of court entered in the bank receivership ordering the sale of the note and mortgage involved was dated December 13, 1933, and the note and mortgage could not have been assigned at least until after the date of this order. We are inclined to think that the appellant's statement that he obtained the assignment sometime in January, 1934, is correct.

On May 2, 1934, the plaintiff-appellant filed his petition in the present case to foreclose the mortgage so assigned to him.

On May 14, 1934, Claude B. Keir, the assignee of the judgment above mentioned and the defendant, George Zimmerman, entered into a stipulation and filed the same in the case in which the judgment was entered, purporting to act under the provisions of chapter 178 of the 45th General Assembly, extending and continuing in force the said judgment of May 28, 1926, against George Zimmerman. The material part of such stipulation is as follows:

"Whereas, it is the voluntary intention of both parties to this stipulation that said judgment be extended and continued in force for a period of two years against the defendant, Geo. Zimmerman. Now therefore, it is agreed by and between both parties that said judgment be continued to May 8, 1936, according to the Statutes of Iowa as set out in Chapter 178 of the Acts of the 45th General Assembly."

Immediately after the filing of the above stipulation, the defendant Keir caused an execution to be issued on the judgment and levied upon certain real estate of said George Zimmerman; it being the same real estate covered by the plaintiff's mortgage.

The plaintiff then filed an amendment to his original petition in the foreclosure action making the said Claude B. Keir a party defendant and asking that the claimed lien of the defendant Keir be adjudged junior and inferior to the lien of plaintiff's mortgage upon the real estate involved. An injunction was issued restraining the sale of the property under defendant Keir's judgment and levy until the determination of the issues involved.

The defendant Keir, in his answer filed to the amended petition, asked that the lien of his judgment be adjudged superior to the lien of plaintiff's mortgage.

It appears without controversy that before the defendant Keir became the assignee of the judgment herein referred to that he had actual and constructive notice and knowledge of the plaintiff's mortgage, and that plaintiff had commenced a foreclosure proceeding thereon.

The issues involved were submitted to the trial court, and the court by its judgment and decree held that the lien of the judgment of the defendant Claude B. Keir was superior and prior to the lien of plaintiff's mortgage. From such order and decree plaintiff, Johnson, prosecutes this appeal.

It will at once become apparent that the only question involved on this appeal is the construction and interpretation of chapter 178 of the Acts of the 45th General Assembly. That is, whether the act permits a judgment lien assigned by a receiver of a closed bank to be continued and retain priority by the filing of a stipulation entered into after the lien has expired by the terms of chapter 178.

The trial court indicated that the question is not without its difficulties, and we are inclined to adopt that statement. The appellant contends that the holder of a judgment assigned by a receiver of a closed bank cannot continue his judgment lien, under the provisions of the chapter referred to uninterrupted so that it will retain its original priority, when the stipulation filed by the judgment debtor and the judgment holder is not filed before the judgment expired under the provisions of chapter 178.

Chapter 178 of the 45th General Assembly provides as follows:

"Section 1. From and after January 1, 1934, no judgment in an action for the foreclosure of a real estate mortgage or deed of trust or in any action on a claim for rent or judgment assigned by a receiver of a closed bank or rendered upon credits assigned by the receiver of a closed bank when the assignee is not a trustee for depositors or creditors of the bank shall be enforced and no execution issued thereon and no force or vitality given thereto for any purpose other than as a set-off or counterclaim after the expiration of a period of two (2) years from the entry thereof.

"Sec. 2. After January 1, 1934, no action or proceedings shall be brought in any court of this state for the purpose of renewing or extending such judgment or prolonging the life thereof. Provided, however, that nothing herein shall prevent the continuance of such judgment in force for a longer period by the voluntary written stipulation of the parties, filed in said cause."

The enactment quoted without doubt amends section 11602 of the 1931 Code. The latter section provides as follows:

"Judgments in the supreme or district court of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all he may subsequently acquire, for the period of ten years from the date of the judgment."

The stipulation purporting to continue and extend the lien of Keir's judgment was filed after January 1, 1934, and after the commencement of plaintiff's suit to foreclose his mortgage. Plaintiff became the holder of his mortgage after January 1, 1934, and at a time when Keir's judgment was barred by the provisions of the said chapter 178. Keir took the assignment of his judgment and obtained and filed the stipulation purporting to continue and extend the life thereof, some five months after the judgment had ceased to exist under the provisions of chapter 178, and with notice and knowledge of the pendency of plaintiff's foreclosure action and plaintiff's asserted claims as to priority therein. Without the enactment of chapter 178, the statutory lien of the defendant Keir's judgment would have expired and terminated in 1936, under the provisions of section 11602, supra, but under the provisions of chapter 178, 45th General Assembly, it expired and terminated on January 1, 1934. Under the latter enactment, not only the lien of the judgment was terminated and ceased to exist after that date, but the judgment itself could not be enforced and no execution could have issued thereon, and the judgment after that date was of no force or validity for any purpose other than a set-off or counterclaim. An action to renew, extend, or prolong the life of such judgment after January 1, 1934, is prohibited. There is, however, the provision that the *judgment* may be *continued* for a longer period

by the voluntary written stipulation of the parties. The question here presents itself, When may such stipulation be filed? The appellant contends that it must be filed before January 1, 1934, and the appellees' position would indicate that it may be filed at any time thereafter within the time that the judgment would continue to be in force and a lien under section 11602, supra.

We have held, following statutory provisions, that a general judgment ceases to operate as a lien upon real estate after the expiration of ten years from the date of rendition, and that mere lapse of time annihilates the lien. Hendershott v. Ping, 24 Iowa 134.

In the case of Boyle v. Maroney, 73 Iowa 70, 35 N. W. 145, 5 Am. St. Rep. 657, we had a question of priority of judgments, and we there held that the lien of one of the judgments having terminated by limitation of statute before the rendition of the second judgment, that the holder of the first judgment could not thereafter revive or renew the lien of his judgment; he having taken no steps to preserve or revive his lien prior to the entry of the second judgment.

In McKenna v. Van Blarcom, 109 Wis. 271, 85 N. W. 322, 83 Am. St. Rep. 895, the court had under consideration a very similar question to the one at bar, and in disposing of it used the following language:

"The lien thereof [judgment] expired ten years from the date of rendition, or October 19, 1888. The fact that the judgment creditor, after the expiration of such lien, sued upon said judgment, and obtained a new one, which was afterwards docketed, does not allow him to tack the two, and thus make a continuous lien. There was a period of several months between the expiration of the old lien and the inception of the new one, during which any other lien upon the property would attach and become superior to the lien of the new judgment afterwards acquired."

In the instant case, "there was a period of several months between the expiration of the old lien and the inception of the new one" during which time other liens would attach and become superior to the lien of the Keir judgment revived or renewed by the stipulation.

"Where the period of limitation has run against the lien of

a judgment, without its revival, it gives way to junior judgments, which thereupon succeed in their order of priority." 34 C. J. 622, section 946.

In Albee v. Curtis, 77 Iowa 644, 42 N. W. 508, we held that judgment liens are created by statute, and "can continue no longer than the statute declares they shall continue, which is ten years. They expire and cease to be liens at the expiration of the time fixed, no matter where the residence of the parties in interest or the owners of the land may be. It is said in Hendershott v. Ping, 24 Iowa 134, that 'the mere lapse of time annihilates the lien' of a judgment." If the judgment lien expires at the expiration of the time fixed by statute, then how can the lien be continued or extended after it has absolutely ceased to exist? Under chapter 178, supra, not only the *lien* of the Keir judgment terminated on January 1, 1934, but the judgment itself was of no further force or effect, except for the purpose of set-off or counterclaim.

In Lakin v. C. H. McCormick & Bros., 81 Iowa 545, 46 N. W. 1061, 1062, we had a case in which an execution was issued and a levy made prior to the termination of the life of the judgment, but the sale under such levy did not take place until after the judgment had become extinct by the statuory limitation, and we there held that the lien of the judgment would not be extended as against a junior lienholder by the levy of execution within the period of limitation, where there was no sale thereunder until after the expiration of ten years from the date of the judgment. We held that the lien of the judgment was measured by the statute fixing its duration at ten years from the date of the judgment, and we used this language:

"If he [prior judgment lien holder] seeks the advantages of his lien, he should not defer action until it is too late to perfect his rights thereunder. The law fixes the period, and provides the means for rendering his lien effectual. If he neglects action until too late to complete his work within the period, then the right to make the levy is a barren one,—in effect no right. * * * The uniform holding of this court has been in accord with the language of the statute, that the lien extends ten years from the date of the judgment"—citing Hendershott v. Ping, supra; Boyle v. Maroney, supra.

In Payette v. Marshall County, 180 Iowa 660, 163 N. W. 592, we used the following language:

"In the absence of statute therefor, a mere personal judgment at law is never a lien upon the defendant's property without levy of execution, and when such statute exists the lien so provided is measured and controlled by its terms. [Quoting section 3801 of the 1897 Code now section 11602 of the 1931 Code.] Thus it will be seen that the very enactment which creates the lien provides in express terms for the period of its existence. * * * It [the statute] does no more than to fix a period of time within which a party, having obtained a judgment, may follow the defendant's real estate into the hands of grantees. If he fails to avail himself of such privilege within the time fixed, the right expires, and he must enforce his judgment, if at all, by the usual method of levy and sale upon such property as he can find belonging to the judgment debtor unaided by a statutory lien. The court has no power to extend its life."

It is undisputed that Keir filed the stipulation purporting to continue his judgment lien *after* two years from the date of rendition of the judgment and five months after January 1, 1934, when chapter 178, supra, became effective as to his judgment. This act is a statute limiting a statutory right.

"A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right. In the latter instance time is made an essence of the right created, and the limitation is an inherent part of the statute, or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation. A lapse of the statutory period operates, therefore, to extinguish the right altogether." 37 C. J., 686, par. 5.

The very statute, section 11602, which creates the lien of a judgment provides by express terms the period of its existence, ten years, and by the amendment as contained in chapter 178 such period as applied to defendant Keir's judgment terminated on January 1, 1934. Ordinarily, a statute of limitations affects the remedy and not the right, and the debt is not paid or canceled when a statute of limitation has barred the remedy, but section 11602, as now amended, not only bars the remedy, but it cancels the debt for all purposes, except as a set-off or counterclaim. True, the amendment provides that the *judgment* may be *continued* in force for a longer period than provided, by the voluntary stipulation of the parties, but a thing that is dead has

no force or vitality and cannot be *continued*. Keir's judgment and the lien thereof expired—ceased to exist—on January 1, 1934, and no act of Keir or of the judgment debtor thereafter could instill life therein. If Kier and the judgment debtor desired to extend or prolong the judgment and the lien thereof, then they should have taken advantage of the provisions of the statute and should have taken such steps as would have renewed or prolonged the life of the judgment prior to the date of its demise. Under appellees' theory a stipulation renewing, extending, and prolonging the life of the judgment and the lien thereof could have been filed at *any* time, and, when filed, would have renewed the lien of the judgment even as against innocent purchasers of the real estate. We cannot read this construction or interpretation from the chapter under consideration.

The case differs from Kerndt v. Porterfield, 56 Iowa 412, 9 N. W. 322, and like cases cited and relied upon by the appellees, in that, in the Porterfield case the court was dealing with liens created by mortgages. In the case at bar we have to deal with a lien created by statute. In the case involving mortgage liens the application of the statutes of limitation are pertinent, but in the instant case the statute limiting the life of a judgment lien has none of the attributes of a statute of limitation. In Payette v. Marshall County, supra, this court specifically held that the general statute of limitations is not applicable to judgment liens and that the judgment lien expires in the time fixed by the statute which makes it a lien. Under section 11602, as it stood before the enactment of chapter 178, a judgment was a lien on the real estate of the judgment debtor for a period of ten years. Chapter 178 amended section 11602 by shortening the period within which the judgment was a lien from ten years to two, when the judgment is assigned by the receiver of a closed bank. Such judgment expired, by the terms of chapter 178, on January 1, 1934, and the lien created by the statute also expired and terminated on that date, if no stipulation was on file to continue the judgment in force for a longer period.

It has been held by the Nebraska court that where a dormant judgment is revived it operates as a lien only on the real estate which the judgment debtor owns at the time of revival. Halmes v. Dovey, 64 Neb. 122, 89 N. W. 631.

If we should construe chapter 178 as appellees contend that it should be construed, and hold that it permits the filing of the

stipulation renewing and prolonging the lien of a judgment after the date fixed for the expiration thereof, and hold that when so filed the judgment lien will continue without interruption and retain its priority over junior liens, then we would create a condition of uncertainty as to the title to and liens upon real estate which would be anything but desirable. It is true that the chapter was enacted for the relief or benefit of debtors, but it is patent that one of its purposes was also to clarify titles to real estate. It must be conceded that Keir or his assignor had no judgment lien after January 1, 1934, at least until May 14, 1934, when the stipulation was filed, and had Keir or his assignor had execution issued during that interval, Zimmerman, the judgment defendant, could have successfully pleaded that the judgment was absolutely barred by the provisions of chapter 178. If this is true, and it must be so, then there was no judgment or right in existence prior to May 14, 1934. And if there was no judgment or lien in existence on May 14, 1934, then the stipulation did not serve to renew, revive, or prolong the judgment and lien which expired under the statute on January 1, 1934. We are constrained to hold that chapter 178 of the 45th General Assembly annihilates appellees' judgment for all purposes, except as a counterclaim or set-off from and after January 1, 1934. The case will be reversed and remanded, with instructions that a decree be entered in accordance with this opinion, establishing the lien of plaintiff's mortgage as prayed in his petition.—Reversed and remanded.

ALBERT, POWERS, KINTZINGER, MITCHELL, HAMILTON, RICHARDS, and PARSONS, JJ., concur.